IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, KEITH T. HAYASHI,<br><br>Plaintiffs-Appellants,<br><br>vs.<br><br>K.A., BY AND THROUGH HIS MOTHER, L.O.,<br><br>Defendants-Appellees. | Case No. 25-cv-00516-DKW-WRP<br><br>**ORDER (1) AFFIRMING AND REVERSING IN PART THE NOVEMBER 4, 2025 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER, AND (2) DENYING AS MOOT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

This case asks whether Plaintiff, the State of Hawai‘i Department of Education (DOE), procedurally violated the Individuals with Disabilities Education Act (IDEA) or substantively failed to provide a free and appropriate public education (FAPE) to Defendant K.A. It also asks whether the DOE violated the Rehabilitation Act (RA) by allegedly failing to provide reasonable accommodations to K.A. and, if so, whether the DOE acted with deliberate indifference in doing so. Upon review of the many briefs in this case, as well as the applicable case law and administrative record, the answers to all of these questions clearly favor the DOE, as explained below.

The issues in this case involve the bus transportation K.A. received from the DOE to facilitate his participation in the extended school year (ESY) for the Summer of 2025. Procedurally, even if the transportation services offered to K.A. were meant to be, but were not, included in his individualized education program (IEP), K.A. was not denied a FAPE because K.A. never established a need for the offered services. Substantively, the Court disagrees with the Administrative Hearing Officer's (AHO) unexplained conclusion that, simply because an offered transportation service was not included in the IEP, K.A. was denied a FAPE. The Court, instead, finds that, on this record, there is no support for the proposition that the IEP was not reasonably calculated to enable K.A. to make progress appropriate in light of his circumstances. Finally, as for K.A.'s claim under the RA, there is no evidence on this record that K.A. was denied any reasonable accommodation necessary to enable his participation in a public program.

As a result, the November 4, 2025 decision of the AHO is AFFIRMED and REVERSED IN PART, and the motion for judgment on the pleadings, Dkt. No. 27, is DENIED AS MOOT.

## BACKGROUND

### I. Before the AHO

On July 7, 2025, K.A., by and through his mother L.O., filed a complaint

against the DOE and Keith Hayashi, as the Superintendent of Hawai‘i's Public Schools (Superintendent). Nov. 4, 2025 Decision of the AHO (AHO Decision) at 1-3, Dkt. No. 19 at 173-175. Two issues were raised before the AHO. First, whether the May 30, 2025 IEP denied K.A. a FAPE by failing to address his "known and documented deficit" in accessing educational locations, with "address" meaning both an "insufficient[]" discussion during the May 30, 2025 IEP meeting and "insufficient" accommodations in the IEP. *Id*. at 4-5. And second, whether the DOE violated Section 504 of the RA by failing to provide reasonable accommodations for K.A.'s "disability-related transportation and location access challenges". *Id*. at 5.

In addressing these issues, the AHO made the following pertinent factual findings. K.A. has been diagnosed with Down syndrome. *Id*. at ¶ 3. L.O. and K.A. live on a farm-like property that is gated, and it is an approximate two to five minute drive from the house to the gate. *Id*. at ¶ 11.[1] The road from the house to the gate is steep and made of dirt, making it difficult for large vehicles to traverse. *Id*.

K.A. attended Elementary Home School from preschool through sixth grade.

[1]Although it is not stated in the AHO Decision, K.A. and L.O. live on the Island of Kaua‘i. Respondents' Exhibit 21, Dkt. No. 29 at 125.

*Id*. at ¶ 6.[2] While attending Elementary Home School, L.O. drove K.A to school, and K.A.'s attendance rate was extremely good. *Id*. On a few occasions when K.A. was in the fifth grade, he went on field trips on the bus with classmates and teachers, and he was able to handle these bus rides without issue. *Id*. at ¶ 12.

At an IEP meeting on May 25, 2023, L.O. informed the IEP team that she did not want K.A. to attend ESY at Elementary-1 because K.A. would not be able to handle the distance from home to the school. *Id*. at ¶ 13. L.O., instead, wanted K.A. to attend ESY at Elementary Home School. *Id*. Elementary Home School is roughly an eight-minute drive from L.O.'s property, while Elementary-1 is roughly a 25-50 minute drive. *Id*. at ¶¶ 11, 14. Nonetheless, during the Summer of 2023, K.A. was offered ESY at Elementary-1. *Id*. at ¶ 16. For 11 days, when the bus went to pick-up K.A. at home, L.O. informed the company that K.A. was having difficulties or upset, and K.A. would not be attending school. *Id*.

On January 13, 2025, observation data was taken on K.A.'s ability to ride the bus from Elementary Home School to Destination-1 and then back to Elementary Home School. *Id*. at ¶ 24. It was determined that K.A. met mastery criteria during these observations. *Id*. On February 7, 2025, L.O. and the DOE

[2]Capitalized terms not otherwise defined herein have the meaning ascribed to them in the AHO Decision. *See* Dkt. No. 19 at 171-172.

agreed to conduct assessments of K.A.'s transportation needs and incorporate any aides or supports into K.A.'s IEP to address his transportation needs based upon the assessment results. *Id*. at ¶ 29.

On February 20, 2025, K.A. participated in a class field trip to the Pearl Harbor Aviation Museum on the Island of O'ahu. *Id*. at ¶ 31. More specifically, at 5:30 a.m., K.A. was dropped-off at the house of EA—his educational assistant at Elementary Home School. *Id*. at ¶¶ 9, 31. EA is one of the two adults that K.A. trusts the most. *Id*. at ¶ 10.[3] EA drove K.A. to the airport approximately 23 miles away. *Id*. at ¶ 31. K.A. did not have any problems during this car ride and had very minimal problems during the subsequent airplane flight to O'ahu. Once in Honolulu, K.A. boarded the bus with no problem and was excited and engaged during the ride to Pearl Harbor. However, en route, he needed reminders about respecting the personal space of his peers. At the end of the excursion, K.A. walked back to and boarded the bus, and took his seat without problem. He also expressed several times to EA how much he loved the bus. *Id*. The bus ride from Honolulu Airport to Pearl Harbor Aviation Museum was approximately 30 minutes. *Id*. at ¶ 32. During this excursion, observation data was taken of K.A.'s

[3]The second is K.A.'s special education teacher (SPED Teacher) for the 2024-2025 school year at Elementary Home School. AHO Decision at ¶¶ 8, 10.

ability to ride the bus, with the conclusion that he met mastery criteria. *Id*.

On March 3, 2025, observation data was taken of K.A.'s ability to ride the bus from Elementary Home School to Destination-1 and back again. *Id*. at ¶ 34. It was determined again that he met mastery criteria during these observations. *Id*. On March 4, 2025, observation data was taken of K.A.'s ability to ride the bus from Elementary Home School to an event in Town-2 and back again. *Id*. at ¶ 35. It was determined that K.A. met mastery criteria once more for these observations. *Id*.

On March 5, 2025, an IEP team meeting was held, with the team agreeing that more data was needed to determine K.A.'s needs, including data on K.A.'s ability to use transportation. *Id*. at ¶ 36. On March 31, 2025, observation data was taken of K.A.'s ability to ride the bus from Elementary Home School to Destination-1 and back again. *Id*. at ¶ 44. It was determined that K.A. met mastery criteria for these observations. *Id*.

K.A.'s IEP was amended on April 13, 2025. *Id*. at ¶ 50. The 4/13/2025 IEP provided K.A. with transportation three times per quarter from March 24, 2025 to September 11, 2025 in order to allow the DOE to further assess K.A.'s transportation needs. The 4/13/2025 IEP also provided that transportation services were to be utilized solely for assessing K.A.'s ability to access, ride,

tolerate, and transition on/off the bus to/from home to Middle Home School. *Id*.

On May 5, 2025, observation data was collected on K.A.'s ability to ride the bus from Elementary Home School to Destination-1 and back again. *Id*. at ¶ 53. It was determined that K.A. met mastery criteria during these observations. *Id*.

A bus company provides services to special education students on behalf of the DOE and services various schools. *Id*. at ¶ 55. The bus company determines the bus route and arranges the pick-up and drop-off dates, times, and locations. *Id*. at ¶ 56. The bus company arranged with L.O. the time of K.A.'s pick-up and agreed that the pick-up would occur at the gate—the same gate mentioned earlier that is approximately a two to five minute drive from L.O.'s house. *Id*. at ¶¶ 11, 57.

On May 8, 2025, the first day of the transportation assessment, K.A. was not at the gate to ride the bus. *Id*. at ¶ 60. Instead, L.O. drove K.A. to Elementary Home School. L.O. told the Principal of Elementary Home School that K.A. had given L.O. a hard time that morning, but said that she would try the bus again on May 9, 2025. *Id*. On May 9, 2025, the bus arrived on-time at the gate. *Id*. at ¶ 61. Once again, however, L.O. and K.A. were not at the gate. The bus aide messaged L.O., who responded at 6:56 a.m. that "we are doing our best, it is challenging, so I will let you know." The bus waited until 7:03 a.m. and then

departed without K.A. L.O. later dropped-off K.A. at Elementary Home School. *Id*. L.O. explained that, on May 8 and 9, 2025, the situation at home was the same as other mornings, with L.O. trying to get K.A. into the car to drive to the gate, but K.A. refusing to do so. *Id*. at ¶ 62.

On May 16, 2025, Principal confirmed with L.O. that the next transportation assessment would be on May 20, 2025, with K.A. being picked-up at 6:55 a.m. *Id*. at ¶ 68. On May 20, 2025, however, K.A. was not at the gate, and the transportation assessment could not be conducted. *Id*. at ¶ 69. More specifically, upon arriving at the pick-up location, the bus waited for approximately five minutes and then left without K.A. L.O. later dropped-off K.A. on-time at Elementary Home School. *Id*.

Between May 21-23, 2025, K.A. participated in a sleepover at Destination-2, which is part of the same property where K.A. lives. *Id*. at ¶ 71. On May 23, 2025, at the end of the sleepover, SPED Teacher drove K.A. from Destination-2 to the gate where the pick-up for the transportation assessment was meant to occur. K.A. walked through the gate, got on the bus, and rode the bus to Destination-1. K.A. later took the bus back to Elementary Home School with his classmates. *Id*.

On May 23, 2025, observation data was taken of K.A.'s ability to ride the bus from Destination-2 to Destination-1, and from Destination-1 to Elementary

Home School. *Id*. at ¶ 72. It was determined that K.A. met mastery criteria during these observations. Further, based upon these and previous observations, it was determined that K.A. consistently mastered the skills of boarding the bus safely, greeting the driver, sitting and remaining seated, exiting the bus, and transitioning. K.A. showed mixed performance in following safety rules, waiting safely, preparing belongings, and identifying his stop. *Id*. In addition, based upon data collected by Elementary Home School, K.A. was able to board and ride a bus successfully and was able to tolerate riding long distances of approximately 63 miles in a car. *Id*. at ¶ 73.

On May 30, 2025, the IEP team continued a meeting begun on May 27, 2025, resulting in an IEP (5/30/2025 IEP). *Id*. at ¶ 79. During this meeting, L.O. did not feel comfortable sharing details of the difficulties she had with K.A. at home when trying to get K.A. into her car to drive to the gate. *Id*. at ¶ 80. Although her attorney, Keith Peck, offered to speak privately with L.O. about the difficulties she experienced with K.A., she chose not to speak with Mr. Peck about the same. *Id*.

During the May 30, 2025 meeting, the DOE offered to change K.A.'s transportation services to a daily service for ESY and the upcoming school year. *Id*. at ¶ 81. L.O. did not indicate whether she wanted transportation services for

K.A. She was informed, though, that when the transportation company called, she could tell the company whether she wanted the service. L.O. and Mr. Peck were asked whether, if EA or SPED Teacher were on the bus, L.O. would be willing to allow Elementary Home School to go through the gate to help L.O. with getting K.A. to the bus. Mr. Peck accepted this offer, but rejected the necessity of it and stated that it was not an offer of FAPE. *Id*.

The 5/30/2025 IEP provides that K.A. will receive Special Education and Related Services during the school year, including daily transportation from June 6, 2025 to September 11, 2025. *Id*. at ¶ 82. The 5/30/2025 IEP also contains a section entitled "Clarification of Services and Supports", which, *inter alia*, states that, from June 20 to July 14, 2025, K.A. will receive transportation services for ESY, with these services continuing for the 2025-2026 school year. *Id*. at ¶ 85.

On June 6, 2025, SPED Teacher emailed L.O. a copy of the IEP and a Prior Written Notice (PWN) from the May 30, 2025 IEP meeting. *Id*. at ¶ 90. The Prior Written Notice, dated June 6, 2025 (6/6/2025 PWN), states, *inter alia*, the following. During the 5/30/2025 IEP meeting, L.O. expressed concerns about K.A.'s home-to-school transportation, but did not offer ideas to support transportation. *Id*. at ¶ 91. The school team outlined potential strategies, including (1) a special education teacher with whom K.A. has a familiar

relationship visiting L.O.'s home, (2) reviewing the Transportation Social Story with L.O., and (3) initially meeting L.O. at Elementary Home School—a familiar location for K.A.—for transport, with a gradual transition to home pick-up as a new routine was established. *Id*.

On June 11, 2025, L.O. replied to SPED Teacher's June 5, 2025 email stating, "At the IEP meeting we did agree to have some means to help [K.A.] get on the bus and get familiar with traveling to the new program. That's not in the IEP documents, but we agreed to it. We also said that it's not going to work, but we'll try. We still believe that because of this the IEP is not an offer of FAPE." *Id*. at ¶ 92. On June 13, 2025, SPED Teacher replied to L.O.'s June 11, 2025 email, asking, *inter alia*, whether a meeting could be scheduled to discuss L.O.'s current thoughts and what she felt might make her feel more comfortable about K.A.'s bus transportation. *Id*. at ¶ 93. L.O. declined to have another meeting. *Id*.

K.A.'s 2025 ESY program was scheduled for June 20 to July 14, 2025 at Middle Home School from 8:00 a.m. to 12:00 p.m. *Id*. at ¶ 87. Elementary Home School was not an appropriate location for K.A.'s ESY because it only had a kindergarten program, which would not satisfy K.A.'s least restrictive environment requirement. *Id*. at ¶ 88.

On June 16, 2025, SPED Teacher sent an email to L.O. with two options for

K.A.'s transportation for ESY. *Id*. at ¶ 94. Following pick-up of K.A. at a location near L.O.'s home, SPED Teacher agreed to ride the bus with K.A. from June 20 through June 26, 2025. Alternatively, on Friday, June 20, and Monday, June 23, 2025, SPED Teacher agreed to meet L.O. and K.A. at Elementary Home School and then ride the bus with K.A. to Middle Home School for ESY. On Tuesday, June 24, 2025, this second option would transition to picking-up K.A. at the location near L.O.'s home, with SPED Teacher riding the bus with K.A. for the next three days. SPED Teacher requested that L.O. select one of these two options by noon on June 18, 2025. SPED Teacher also informed L.O. that, if she did not select an option, the first option would be provided. *Id*.

Having not received a response from L.O. by the referenced deadline, SPED Teacher emailed L.O. in the afternoon of June 18, 2025 to inform her that, starting on June 20, 2025, transportation services would be provided pursuant to the first option outlined above. *Id*. at ¶ 95. Among other things, SPED Teacher also informed L.O. that the bus company would be calling her to arrange K.A.'s pick-up and drop-off times. *Id*. In the evening of June 18, 2025, L.O. asked SPED Teacher to send the bus to L.O.'s home to take K.A. to ESY. *Id*. at ¶ 96. On June 19, 2025, SPED Teacher asked L.O., *inter alia*, to text or call SPED Teacher if L.O. was having difficulties getting K.A. to the bus, as SPED Teacher was

willing to help. *Id*. at ¶ 97. On June 19, 2025 at 6:18 p.m., the bus aide texted L.O. to confirm that pick-up on June 20, 2025 was at 7:15 a.m. *Id*. at ¶ 98.

On June 20, 2025 at 7:01 a.m., the bus aide sent a message to L.O., informing her that the bus was on its way to pick-up K.A. *Id*. at ¶ 99. The bus picked-up SPED Teacher from Elementary Home School at 7:10 a.m. The bus and SPED Teacher then drove to K.A.'s gate and waited. L.O. replied to the bus aide's text message, stating that she was having difficulties, and she and K.A. would not be coming out. SPED Teacher exited the bus and walked back to Elementary Home School. *Id*. L.O. testified that, on June 20, 2025, "the same things that happened every morning for the past several years when getting [K.A.] ready to go to Elementary Home School occurred that morning," and she could not get K.A. to the bus. *Id*. at ¶ 100.

On June 23, 2025 at 7:10 a.m., the bus picked-up SPED Teacher from Elementary Home School. *Id*. at ¶ 103. The bus then drove to K.A.'s gate and waited until 7:25 a.m. The bus driver called L.O. twice and left messages, while SPED Teacher texted L.O. at 7:23 a.m. to let L.O. know SPED Teacher was at the gate and on the bus waiting for K.A. L.O. did not respond to these overtures. SPED Teacher got off the bus at 7:25 a.m. and walked back to Elementary Home School. *Id*. On June 24, 2025, the bus and SPED Teacher drove to the gate and

waited, but K.A. did not show-up. *Id.* at ¶ 106. SPED Teacher got off the bus and walked back to Elementary Home School. *Id.* Later the same day, Principal informed L.O. that another attempt would be made to pick-up K.A. on June 25, 2025. *Id.* at ¶ 107. Principal asked L.O. to provide specific details about the challenges L.O. faced in getting K.A. to the pick-up location so the school could provide targeted support. Principal further informed L.O. that, pursuant to the DOE's transportation policy, if K.A. did not get on the bus the next day, transportation services would be suspended until L.O. contacted transportation to resume service. L.O. responded, telling Principal that she had done everything she could to tell Principal "what is happening with the Bus." L.O. also stated that she had asked for "accommodations this year", but none had been provided. *Id.*

On June 25, 2025, the bus and SPED Teacher waited at the gate, but K.A. again did not show-up. *Id.* at ¶ 109. SPED Teacher got off the bus and walked back to Elementary Home School. *Id.* K.A. did not attend any days of ESY during the Summer of 2025. *Id.* at ¶ 111.

The AHO made the following pertinent conclusions of law. First, the AHO concluded that, during the 5/30/2025 IEP meeting, the IEP team sufficiently discussed K.A.'s difficulty in accessing educational locations. *Id.* at 41-44. More specifically, the AHO concluded, based upon a review of the evidence, that

L.O. declined to share information about difficulties she experienced with getting K.A. to the gate, despite being afforded the opportunity to do so. *Id*. at 43.

Second, the AHO concluded that the 5/30/2025 IEP did not have sufficient accommodations to address K.A.'s difficulty in accessing educational locations. *Id*. at 44-47. More specifically, the AHO concluded that K.A was denied a FAPE when the 5/30/2025 IEP failed to include that a familiar person would be on the bus to help K.A. transition to Middle Home School. *Id*. at 46. As relief for this conclusion, the AHO instructed the IEP team to decide whether additional assessments were necessary to determine K.A.'s transportation needs and to hold an IEP revision meeting. *Id*. at 51

Third, the AHO concluded that the DOE did not fail to provide reasonable accommodations to K.A. in violation of the RA. *Id*. at 47-51. More specifically, the AHO concluded (1) relief was not available under the RA because K.A. would receive relief under the IDEA, (2) either the DOE provided accommodations or accommodations were not requested, and (3) K.A. failed to show that he was excluded from participation in, denied the benefits of, or subject to discrimination at Elementary Home School. *Id*.

## II. <u>Before this Court</u>

The DOE and Superintendent (together, Plaintiffs) initiated this proceeding

on December 4, 2025, with the filing of a Complaint against K.A., by and through his Mother, L.O. (K.A. and L.O., together, Defendants). Dkt. No. 1. Among other things, Plaintiffs seek vacatur of the AHO Decision on the ground that it is not supported by the record. *Id*. at 10.

On February 23, 2026, Defendants filed a joint Answer to the Complaint and Counterclaims against Plaintiffs. Dkt. No. 12. Defendants' Counterclaims seek the following findings: (1) the AHO issued an inadequate remedy for the denial of FAPE, (2) the AHO erred in concluding that a sufficient discussion took place at the 5/30/2025 IEP meeting as to transportation services, (3) the AHO erred in concluding that the RA had not been violated, and (4) additional procedural violations denied K.A. a FAPE. *Id*. at 12-19.

On April 21, 2026, Plaintiffs moved for judgment on the pleadings or dismissal (motion) with respect to Defendants' RA Counterclaim. Dkt. No. 27. Plaintiffs argue that the counterclaim is subject to judgment or should be dismissed because Defendants fail to plead a violation of the RA and/or Defendants have failed to administratively exhaust any such claim. *Id*. at 5-11. Defendants oppose the motion. Dkt. No. 37. Among other things, they argue that (1) federal pleading standards do not apply to their counterclaim because it is an appeal of the AHO Decision, (2) even if pleading standards applied, the counterclaim states a

claim under the RA, and (3) the counterclaim has been exhausted. *Id*. at 4-12. Plaintiffs have filed a reply in support of the motion. Dkt. No. 39.

On May 22, 2026, Plaintiffs and Defendants filed Opening Briefs in support of, respectively, their appeal and counterclaims. Dkt. Nos. 32, 34. In Plaintiffs' Opening Brief on appeal, they argue that (1) Defendants failed to establish that bus services were a FAPE requirement, (2) it was not a procedural violation of the IDEA to omit from the IEP "discussions" about bus services, and (3) the failure to include bus services in the IEP was harmless. Dkt. No. 32 at 18-25. In response, Defendants argue that (1) the IEP team agreed that "supports" were necessary for K.A. to access the bus, (2) the DOE "purposefully withheld" those supports from the IEP, and (3) a showing of harm was not required for a substantive violation of the IDEA. Dkt. No. 35 at 9-17. Plaintiffs have filed a reply brief in support of their appeal. Dkt. No. 38.

In Defendants' Opening Brief on their counterclaims, they argue that (1) the AHO erred in failing to order "compensatory education" as a remedy for the denial of FAPE, (2) the AHO erred in finding discussion at the May 30, 2025 IEP meeting regarding transportation to be sufficient, (3) the AHO erred in denying K.A.'s claim under the RA, and (4) the DOE's "unilateral" termination of bus services after five missed pick-ups constituted a "material failure" to implement

the IEP. Dkt. No. 34 at 16-31. In response, Plaintiffs argue that (1) the AHO correctly declined to award compensatory education as a form of relief, (2) Defendants should not be permitted to raise "new issues" that were not raised before the AHO, (3) Defendants fail to challenge the AHO's findings of fact and conclusions of law with respect to the discussion of transportation at the May 30, 2025 IEP meeting, and (4) the AHO properly denied K.A.'s claim under the RA. Dkt. No. 36 at 5-19. Defendants have filed a reply in support of their counterclaims. Dkt. No. 40.

This Order now follows.

## STANDARDS OF REVIEW

"Any party aggrieved by the findings and decision" made pursuant to an administrative hearing under the IDEA "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States . . . ." 20 U.S.C. § 1415(i)(2)(A). When a party files an action challenging an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court deems is appropriate." *Id.* § 1415(i)(2)(C).

The party challenging the administrative decision bears the burden of proof. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (stating that the challenging party bears the burden of demonstrating that the hearings officer should be reversed, as well as "the burden of persuasion on each claim challenged."); *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007).

Questions of law and whether a student has been provided a FAPE are reviewed *de novo*. *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887–88 (9th Cir. 2001). Factual findings, however, are given "due weight", and a court must not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982). Deference increases to an AHO's factual findings when they are "thorough and careful." *J.W.*, 626 F.3d at 438 (quotation omitted).

## DISCUSSION

This action presents three primary issues. First, Defendants argue that the AHO erred in not finding a procedural violation of the IDEA. Second, Plaintiffs argue that the AHO erred in finding a substantive violation of the IDEA. And,

third, Defendants argue that the AHO erred in denying K.A.'s claim under the RA. The Court addresses each of these matters in turn below.

### 1. <u>No Procedural Violation of the IDEA</u>

The Ninth Circuit Court of Appeals has explained that "compliance with the IDEA's procedural safeguards is essential to ensuring that every eligible child receives a FAPE, and those procedures which provide for meaningful parental participation are particularly important." *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1195 (9th Cir. 2017) (quotation omitted). "A procedural violation denies a free appropriate public education if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010). A FAPE is also denied if a parent's ability to participate in the enforcement of an IEP is seriously infringed. *M.C.*, 858 F.3d at 1198. This occurs when a parent "is unaware of the services offered to the student", and, thus, cannot monitor the provision of the same. *Id*.

Here, Defendants argue that a procedural violation of the IDEA occurred because the DOE withheld "operational facts" from the IEP team regarding transportation services, such as a purported "five-minute wait window" for the bus,

a purported "policy automatically terminating service after five missed pickups," and the "distance" between K.A.'s residence and the gate. Dkt. No. 34 at 21-22. Defendants argue that these "facts" were all "uniquely within DOE's possession…." *Id*. at 22. Defendants also argue that a school principal "narrowed" the IEP team's discussion by, *inter alia*, purportedly refusing to discuss alternative locations for ESY and allegedly "misrepresent[ing] the availability of age-appropriate peers". *Id*.

Defendants assertions are all wildly misplaced on the record presented. Notably, the record provides no support that any of the purported "facts" recited above are, in fact, facts. They are certainly not findings of fact in the AHO Decision.[4] Specifically, the AHO did not find the existence of either a five-minute wait window or a policy of terminating bus service after five missed pick-ups, much less that these "facts" were withheld from the IEP team. Defendants' citations, *see id*. (citing ¶¶ 11, 56-58 of the AHO Decision), include no such findings. Further, it is absurd for Defendants to claim that the DOE, or any other Defendant, was the sole possessor of knowledge regarding "the distance between

[4]In that regard, the Court notes that neither party challenges any of the factual findings made in the AHO Decision or contends that the AHO erred in not making any particular finding. Instead, all challenges are to the AHO's conclusions of law. Further, upon review of the entire record, the Court finds the AHO's factual findings to be thorough and careful, and, thus, affords them deference for purposes of this Order. *See J.W.*, 626 F.3d at 438.

K.A.'s residence" and K.A.'s gate. *See* AHO Decision at ¶ 11 (citing 8/26/25 Depo. Tr. of L.O. (Dkt. No. 20) at 34:12-35:22) (L.O. describing the distance from her home to the gate as a "couple minutes" to "five minutes."). The AHO also did not make any factual findings that a school principal "refused to discuss" either alternative locations for ESY or modified transportation arrangements, or "misrepresented the availability of age-appropriate peers".[5] Instead, these are cavalier and unsupported reconstructions of the record. Finally, there is no factual finding supporting the ideas that the DOE made decisions "unilaterally" or "after" the IEP meeting. The record, whether in the video recording of the May 30, 2025 IEP meeting or the AHO Decision, reflects that transportation decisions were made collaboratively and during the meeting. *See* AHO Decision at ¶ 81.[6]

---

[5]Defendants cite, in part, as support for these assertions "Tr. 79:22-80:3". Dkt. No. 34 at 22. That small portion of deposition testimony, however, is simply a question from counsel, *See* Dkt. No. 20 at 79:22-80:3, which, obviously, is not evidence, let alone a factual finding, of anything.

[6]The Court further notes that Defendants' argument—regarding the withholding of operational facts discussed above—was neither alleged in Defendants' administrative complaint nor aired at the hearing before the AHO. *See generally* Dkt. No. 19 at 3-11 (Defendants' administrative complaint); *id*. at 173-224 (AHO Decision). Instead, at best, this argument was raised for the first time in Defendants' post-hearing closing brief. *Id*. at 91, 97. This Court, therefore, also lacks jurisdiction to consider any argument related to purportedly withheld operational facts. *See J.W.*, 626 F.3d at 451 (concluding that the court lacked subject matter jurisdiction over issues newly raised in a student's written closing argument).

In summary, whether individually or collectively, Defendants have pointed to no procedural violation on this record. The AHO Decision is, therefore, AFFIRMED in this respect.[7]

**2. <u>No Substantive Violation of the IDEA</u>**

A substantive violation of the IDEA occurs when a student is denied a FAPE. 20 U.S.C. § 1415(f)(3)(E)(i). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cty. Sch. Dist.*, 580 U.S. 386, 399 (2017). In other words, an IEP must (1) be "reasonable", (2) "aim to enable the child to make progress", and (3) "be appropriate in light of the child's circumstances". *Id*. at 399-400.

The AHO concluded that a substantive violation had occurred due to the "failure to write in the 5/30/2025 IEP that a familiar person will be on the bus and go to the house to help [K.A.] transition to Middle Home School for ESY…." AHO Decision at 46. Plaintiffs argue that this conclusion was in error because (1) bus services were not FAPE requirements, (2) bus services discussed at the IEP

[7]Because Defendants have failed to show any procedural violation, it is unnecessary for the Court to address whether any unproven violation resulted in a denial of FAPE.

meeting were "informal promises to address an issue that only [L.O] knew about", and (3) the discussed bus services were provided to K.A. Dkt. No. 33-1 at 18-25.

Upon review of the record, the Court finds that no violation of the IDEA, substantive or procedural, occurred related to the "failure to write in the 5/30/2025 IEP that a familiar person will be on the bus and go to the house to help [K.A.] transition to Middle Home School for ESY…." Principally, the AHO's contrary conclusion of a substantive violation is unsupported by any factual finding made in the AHO Decision and, if anything, is inconsistent with those findings. The Court, therefore, affords this legal conclusion no deference. *See J.W.*, 626 F.3d at 438 (explaining that deference is afforded an AHO's decision when it shows "careful, impartial consideration of all the evidence and demonstrates…sensitivity to the complexity of the issues presented.") (quotations omitted).[8]

The AHO's own factual findings are clear in this regard. Each time observation data was obtained of K.A.'s ability to ride the bus, it was determined that he met "mastery criteria". AHO Decision at ¶¶ 24, 32, 34, 35, 44, 53, 72.

[8]The AHO's conclusion of a *substantive* violation is further undermined, given that case law indicates that the failure to "write" a required service in an IEP is more accurately considered a *procedural*, rather than substantive, violation of the IDEA. *See M.C.*, 858 F.3d at 1195-99 (discussing the failure to adequately "document" or "identify" required services or devices as "procedural" violations of the IDEA); *J.L.*, 592 F.3d at 952-953 (similar with respect to "specifying" the minutes devoted to distinct services). Whatever the label, for the reasons discussed herein, no violation, substantive or procedural, occurred in the manner claimed.

Even on a lengthy trip to Oʻahu, K.A. did not have any problems during the car ride to the airport, had very minimal problems during the airplane ride, and, again, minimal problems on a bus in Honolulu. *Id*. at ¶ 31. After a multi-day sleepover on the same property where K.A. lives, K.A. walked through the gate, got on the bus, rode the bus to Destination-1, and, later, took the bus back to Elementary Home School with his classmates without issue. *Id*. at ¶ 71. Put simply, once on the bus, there is neither evidence nor a factual finding that K.A. had any problems at all with school-related transportation.

Perhaps as a result of this factual truth, Defendants, instead, frame the debate around a different purported problem. Specifically, Defendants contend that the "heart of the case" is K.A.'s "home-to-gate-to-new-placement transition, not the act of sitting on a bus." Dkt. No. 35 at 12. If this is the "heart" of Defendants' case, the record shows that one thing is clear: it is shrouded in unknowns, principally of Defendants' making. Specifically, despite repeated DOE invitations to explain the vague nature of L.O.'s alleged problem with getting K.A. from home, into a car, and to the gate where the bus and, frequently, teachers awaited, L.O. repeatedly declined, never providing the clarity that might have enabled the DOE to offer new suggestions. AHO Decision at ¶¶ 80, 89, 92, 93, 104, 105, 107, 108. Moreover, at the IEP meeting, L.O. did not even indicate whether she

wanted transportation services at all. *Id*. at ¶ 81. It, thus, cannot be argued that any services, such as a familiar face on the bus, were *needed* or, as relevant to a substantive violation of the IDEA, *reasonable*, *aimed to enable progress*, or *appropriate under the circumstances*, *see Endrew F.*, 580 U.S. at 399-400, when the circumstances themselves were known, if by anyone, to Defendants alone. As a result, the Court finds that the IEP's provision of "transportation services for ESY from home to school for Extended School Year Services, from 6/20/2025 to 7/14/2025 and services will continue for the 2025-2026 school year[,]" satisfied Plaintiffs' substantive obligation under the IDEA.

So the record is complete, in light of the AHO's conclusion in this regard and the parties' arguments, the Court also addresses whether the failure to "write" in the IEP additional transportation-related services constituted a procedural violation of the IDEA and, if so, whether the violation resulted in denial of FAPE. First, in light of the AHO's undisputed factual finding that Plaintiffs offered and Defendants accepted the additional transportation-related services at issue, *see* AHO Decision at ¶ 81, the Court assumes for present purposes that a procedural violation occurred in failing to document those services in the IEP, *cf. M.C.*, 858 F.3d at 1197 (finding a procedural violation where an IEP failed to "accurately document" the minutes offered for certain services).

Second, even if considered a procedural violation, the Court finds no denial of FAPE, or anything close to it, on this record. The reasons are straightforward. Unlike the plaintiffs in *M.C.*, here, L.O. knew precisely—because she was informed repeatedly—about the offered services *and* the offered services were provided exactly as promised. AHO Decision at ¶¶ 81, 89-91, 94-97, 99, 103, 105-107, 109. In addition, on this record, Defendants have shown no loss of an educational opportunity, an infringement of L.O.'s opportunity to participate in or enforce the IEP, or a deprivation of educational benefits, from the failure to "write" in the IEP the offered and provided transportation services. *See J.L.*, 592 F.3d at 953; *M.C.*, 858 F.3d at 1198. The record is again crystal clear that (1) L.O. had an opportunity to fully participate in the formulation of the IEP, including with respect to transportation services, (2) L.O. has been able to enforce the IEP as well as the offered transportation services, and (3) any lost or deprived educational opportunities or benefits were not due to the failure to "write" those services in the IEP. AHO Decision at 50 & ¶¶ 80, 81, 99, 103, 106, 109. As a result, no substantive or procedural violation of the IDEA occurred in this regard.[9]

### 3. No Violation of the Rehabilitation Act

---

[9]Because there has been no violation of the IDEA, it is unnecessary for the Court to address Defendants' arguments related to the relief warranted for a violation.

Before the AHO, Defendants asserted a claim under the RA premised upon Plaintiffs' alleged failure to provide a number of reasonable accommodations. AHO Decision at 47. To state a reasonable accommodation claim under the RA, a litigant must show that the opposing party "failed to make reasonable modifications that would accommodate the [claimant's] disability without fundamentally altering the nature of the program or activity, and that the accommodation would have enabled [the claimant] to meet the program's essential eligibility requirements." *A.G. v. Paradise Valley Unified Sch. Dist.*, 815 F.3d 1195, 1206 (9th Cir. 2016) (citations and quotations omitted).

The AHO rejected this claim on two distinct grounds. First, procedurally, the AHO concluded that, because relief was available to Defendants under the IDEA, they were not entitled to relief under the RA. AHO Decision at 47. Alternatively, the AHO concluded that Defendants had failed to state a claim under the RA. *Id*. at 47-51. More specifically, the AHO concluded that Plaintiffs provided the accommodations at issue or Defendants never requested them. *Id*. at 48. The AHO further concluded that K.A. was not excluded from participating in ESY due to any lack of accommodations. *Id*. at 49-51.

For the reasons discussed below and in the AHO Decision, because Defendants have clearly failed to allege a viable claim under the RA, the Court

affirms the denial of this claim on that ground alone.[10] Put simply, on this record, it strains credulity for Defendants to even assert a reasonable accommodation claim. Among other things, there is no evidence or factual finding that Defendants *ever* requested any accommodation, reasonable or otherwise, from Plaintiffs on any topic related to K.A.'s transportation. While this failure is not determinative of the claim, *see A.G.*, 815 F.3d at 1207, what is relevant is that, to the extent "accommodations" were provided to K.A., this *only* happened because Defendants offered the accommodation in the first place.[11] In other words, as the AHO concluded, Defendants *did* provide or offer many of the accommodations at issue, including a bus aide, advance phone calls, real-time messaging, home visits, social stories, trusted adults riding on the bus with K.A., and familiar sites.[12] Further, in part because Defendants frequently did not cooperate, there is no evidence or factual finding that *any* of the identified accommodations were necessary for K.A. to receive education services. This is perhaps why Defendants

---

[10]It is, therefore, unnecessary for the Court to address whether Defendants' claim under the RA was barred due to relief being available under the IDEA.

[11]For this, among other reasons, credulity is strained beyond the breaking-point when Defendants contend that the DOE and its officials acted with "deliberate indifference". *See* Dkt. No. 34 at 25-27.

[12]As for the remaining "accommodations", as the AHO explained, one—"individualized operational procedures"—was "unclear", given that Defendants did not identify any such procedures, and two—a bus "wait window" of more than five minutes and a "cancellation threshold" beyond five pick-ups—was, as discussed above, premised upon non-existent facts.

do not attempt to address or even mention these issues in their briefing. Instead, in a brief paragraph, Defendants state only that, because K.A. did not attend any days of ESY, this "alone" establishes exclusion from a program or activity. Dkt. No. 34 at 25. Defendants ignore, however, that they must show that an "accommodation would have enabled [K.A.] to meet the program's essential eligibility requirements." *See A.G.*, 815 F.3d at 1206. As discussed, there has been no such showing here. Therefore, the mere fact that K.A. did not attend ESY is misplaced. For these reasons, the AHO's denial of the RA claim is AFFIRMED.[13]

## CONCLUSION

For the reasons set forth herein, the November 4, 2025 decision of the AHO is AFFIRMED IN PART and REVERSED IN PART. The Court finds that, on this record, there has been no violation of either the IDEA or the RA. Accordingly, the Clerk of Court is directed to enter judgment in favor of Plaintiffs and then close this case.

The motion for judgment on the pleadings, Dkt. No. 27, is DENIED AS MOOT.

---

[13]Because the Court affirms the AHO's denial of Defendants' claim under the RA, Plaintiffs' motion for judgment on the pleadings, Dkt. No. 27, with respect to the RA claim and/or the damages sought thereunder is DENIED AS MOOT.

IT IS SO ORDERED.

DATED: October 7, 2026 at Honolulu, Hawai‘i.

Derrick K. Watson
Chief United States District Judge